material, and a misrepresentation as to the fact is equally fatal to the policy.

It is urged that by chapter 326 of the Laws of 1906, § 16, the law has been changed. It is therein provided, by section 58, added to the Insurance Law:

"And all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties."

I do not understand that the Legislature thereby intended to prescribe that a contract made upon misrepresentation of a material fact should still be a valid contract, unless such misrepresentations were fraudulently made.

The rule of law that a contract made upon a misrepresentation of a material fact, although innocently made, is not enforceable, rests upon such sound equity that the Legislature will not be presumed to have intended to have abolished the same, unless language were used unmistakably indicating such an intent. It seems clear to me that the object intended to be accomplished by this legislation was to protect the policy holder from the rule of law that had theretofore been held that a warranty of an immaterial fact, if untrue, voided the policy.

The position taken by the plaintiff in this case is a most extraordinary one. As a matter of law it is wholly insufficient to answer the admitted fact of the false representation as to the expression of an unfavorable opinion as to the physical condition of the insured by a medical examiner.

I recommend that the judgment be reversed, with costs, and the complaint dismissed, with costs, and a finding that the deceased misrepresented a material fact, to wit, that no unfavorable opinion as to the physical condition of the insured had been given by a medical examiner, and that such misrepresentation was made for the purpose of inducing the contract of insurance, which was made by defendant in reliance thereupon.

---

DAZEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Term, First Department. November 19, 1914.)

1. CARRIERS (§ 405*)—BAGGAGE—LIMITATION OF LIABILITY.

The mere delivery and acceptance of a baggage receipt or check, wherein the carrier seeks to embody terms of a special contract limiting the carrier's liability for loss of baggage through its fault, independent of the Public Service Commissions Law, does not create such a limitation, which can be shown only by the passenger's assent to or understanding of the special provision sought to be made effectual against him through his acceptance and retention of the receipt or check, without anything from which it might be inferred that the passenger was guilty of any nondisclosure as to value which would create any estoppel against her.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1544–1549; Dec. Dig. § 405.*]

2. CARRIERS (§ 405*)—BAGGAGE—LIMITATION OF LIABILITY—STATUTES.

Under Public Service Commissions Law (Consol. Laws, c. 48) § 28, which requires every carrier to file and give public notice of schedules

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

showing the fares and charges for passengers and baggage, and section 38, providing that every carrier shall be liable for loss or injury to baggage to its full value, but that the value in excess of $150 shall be stated upon delivery to the carrier, who shall issue a receipt stating such value, and may make a reasonable charge for liability in excess of $150, and where defendant railroad posted tariffs providing that 150 pounds of baggage not exceeding $100 in value could be checked free for each passenger, and that on baggage carried between points in the state without charge the limit of value should be $150, the carrier was liable for the full value of all property carried as baggage, and might accept such property without inquiry as to value, leaving the value in event of loss a matter for legal proof, or by inquiring the value, and inserting a statement thereof in the receipt, might estop the owner from claiming a higher valuation in case of loss; and where the passenger, paying full regular fare, had not stated, and the carrier had not inquired, the value of the baggage, a check limiting its value to $150 was ineffectual.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1544–1549; Dec. Dig. § 405.*]

3. CARRIERS (§ 405*)—BAGGAGE—LIMITATION OF LIABILITY—WAIVER.

Such provision as to the exaction of an additional charge for liability in excess of $150 is for the benefit of the carrier, who at its option may waive it, or proceed without reference to it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1544–1549; Dec. Dig. § 405.*]

Appeal from City Court of New York, Trial Term.

Action by Lucy Harding Dazey against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The opinion of Mr. Justice William L. Ransom, in the City Court, awarding to the plaintiff the judgment appealed from, was as follows:

The defendant carrier moves that the verdict for $525 in favor of the plaintiff be set aside, or, as the alternative, that the verdict be reduced to $150. The sum of $525 represents the damage sustained by the contents of the plaintiff's trunks while in the course of transportation by the defendant on a journey wholly within the state of New York. The sum of $150 represents the figure at which the defendant claims that it effectually fixed its own maximum liability by acts on its part in no wise brought to the knowledge of the plaintiff or any one acting for her. Because unconvinced that the Legislature of this state has enacted, or its Court of Appeals declared, any rule of law giving effectiveness to the method by which this carrier sought to rid itself of its historic obligation to compensate fully for property injured by its fault, I deny the defendant's motion and direct the entry of judgment for the plaintiff in the sum of $525.

The plaintiff sued for the damage done by water to the contents of her two trunks. The complaint sounded in negligence. The plaintiff had been at the Dunwoodie Country Club, in Westchester county, a few miles distant from New York City. She was hurried in her preparations for return. Her trunks went by open wagon from the clubhouse to the defendant's station at Dunwoodie. The plaintiff meanwhile took a "short cut" across the club grounds. She arrived in time to get on the train she wished to take, but her trunks did not come until the train had gone. They were sent to New York on a later train that day. When delivered at the plaintiff's residence the following day, their contents were in a thoroughly water-soaked condition. It was not disputed by the defendant that all of the contents were articles which the plaintiff was entitled, at common law, to have transported as her "baggage." Under the stipulations of counsel, the case was tried in a manner conforming to suggestions sometimes made for the improvement of the conduct of civil trials (Story on "The Reform of Legal Procedure"). It was agreed by counsel that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the verdict of the jury should be taken specially upon these two questions: "First. Did the injury and damage to the plaintiff's trunks and to the contents of the trunks take place while the trunks were in the custody and charge of the defendant? Second. What was the full amount of the injury and damage sustained by the plaintiff's trunks and their contents while the same were in the custody and charge of the defendant?" It was further agreed that remaining questions should be determined by the court, subject to the finding of the jury upon these two special inquiries, and that a verdict should be directed accordingly. When the jury answered the first question in the affirmative, and the second question by fixing the total damage at $525, each side moved for the direction of a verdict. The court directed a verdict for the plaintiff for $525. The defendant moved to set aside or reduce the verdict so directed. The court stayed all proceedings, including entry of judgment, for the usual period following the determination of the motion, and counsel were invited to submit briefs, particularly upon the question of the limitation of liability to $150.

The defendant asks that the finding of the jury in answer to the first question be set aside and the verdict for the plaintiff accordingly vacated altogether. This request is without merit. The jury was amply justified in finding that the plaintiff's baggage became water-soaked through the defendant's fault and while in the defendant's possession. The evidence sustained the allegations of the complaint that the damage was due to the negligence of the carrier. As·to the second finding, which was less than half the amount claimed by the plaintiff, the defendant's own experts afforded no basis for reducing the total amount of damage below $800, and the jury's finding of $525 is to be regarded as an extremely low appraisal of the injury done to the newly purchased autumn attire of a woman of evident means and social standing.

The pivotal question in the case is that reserved for the court, viz., whether there is merit in the·defendant's affirmative defense that by virtue of a special contract with the plaintiff, under which she and her baggage ·were transported, or by virtue of acts done by it in compliance with provisions of the Public Service Commissions Law, her recovery for damage done to her baggage was limited to $150. The circumstances of the submission of this issue to the court require a somewhat particularized statement of the facts.

The two "baggage checks," which the plaintiff delivered up at the time her trunks reached the hotel, contained the following indorsement, in fine print, on the reverse side of each check, as one of several paragraphs of what was denominated a "Notice to Passengers": "Baggage consists of a passenger's personal wearing apparel, and liability is limited to $100 (except a greater or less amount is provided in the tariffs) on full fare ticket, unless a greater value is declared by owner at time of checking and payment is made therefor." The baggage rules and regulations, filed as tariffs by the defendant with the Public Service Commission, contain the following provisions: "Section 5. Baggage allowance A and B in tariff regulations: (a) Subject to limitations shown in sections 16 and 17 hereof, 150 pounds of baggage, not exceeding $100 in value, will be checked without charge for each adult passenger, and 75 pounds, not exceeding $50 in value, for each child traveling on a half ticket (unless a lower limit of value is shown in tariff announcing fares), except as follows: (b) On baggage carried between two points in New York state not requiring transit through another state, the limit of value of baggage carried without charge will be $150 for each adult passenger and $75 for each child traveling on a half ticket."

The plaintiff did not personally check her trunks at the Dunwoodie station, and did not see the checks until the following day, after the water-soaked trunks had reached New York. As she started down the path from the clubhouse, a young Swedish boy, named Axel Isaakson, 16 to 18 years· old, employed by the club as a porter, went with her, primarily to carry a suit case and umbrella. He ran ahead, before the station was reached, and bought a· ticket. "The full regular fare" was paid therefor, as the complaint alleges and the answer admits. By that was no doubt meant, as the proofs indicate, the fare which the defendant ordinarily charges, under the statute, for such a trip, without reference to the transportation of any baggage at all. The

baggage agent went out with Isaakson to check the trunks, but the trunks had not arrived at the platform and the train had, so Isaakson handed the plaintiff her ticket as she boarded the train. The two trunks soon came, the agent accepted them for transportation and handed Isaakson checks for them, and Isaakson mailed the checks to the plaintiff at her New York address, where she received them only after the damage had taken place.

The two baggage checks handed the Swedish boy were about two inches square. On the front side was the name of the carrier in conspicuous type, the words "local duplicate," blanks filled in with the source and destination of the traffic, a check number in very large type, and a fine-print inscription: "See conditions on back. Value not stated." Neither Isaakson nor any one else said anything to the defendant's employés as to the value of the trunks or their contents. No one asked or said anything to Isaakson or the plaintiff about value, or about any relation between passenger rates and the limit of liability for injury to baggage. No signs or notices on the subject were posted anywhere on the defendant's premises. Nothing was said or posted about filed tariffs. No suggestion was made that more than one rate of fare was charged between Dunwoodie and New York. Isaakson, to whom the checks were handed, could read English very little, if at all, and could not speak English sufficiently to make his testimony readily understandable. There was no evidence that Isaakson or the plaintiff ever read the checks, or any similar checks, or knew anything about even the existence of tariff schedules.

There was no evidence that the passenger ticket contained any indication of relationship between the fare paid, value declared, and extent of liability for loss of baggage; no evidence that trunks on which a value in excess of $150 is declared and a higher rate of fare accordingly paid by the owner are carried in any different way whatsoever from trunks whose value is undeclared. The outward appearance of the two trunks, as exhibited in court, was clearly such that any reasonable person would have been bound to infer that, if the trunks were filled even with ordinary articles of apparel, the value of the contents would exceed $150.

[1] Do these facts sustain the defendant's claim that it has limited its traditional liability in a manner sanctioned by law in this state? It has long been settled law in New York that the mere delivery and acceptance of such a receipt or check, wherein the carrier seeks to embody terms of a special contract, does not create such a contract. The question of fact in each case is whether such acceptance was with knowledge of the contents of the check, or with notice that it did contain special contractual provisions, so that the acceptor was bound to examine its terms. Independently of what is contained in the Public Service Commissions Law, there can be no question that a special contract limiting the carrier's liability for loss of baggage through its fault can be spelled out only from the acceptor's assent, notice, or understanding of the special provisions, or of the fact that special provisions are sought to be made effectual against him through his acceptance and retention of the receipt or check. Rawson v. Penn. R. R., 48 N. Y. 212, 8 Am. Rep. 543; Grossman v. Dodd, 63 Hun, 324, 17 N. Y. Supp. 855, affirmed 137 N. Y. 599, 33 N. E. 642; Morgan v. Woolverton, 136 App. Div. 352, 120 N. Y. Supp. 1008; Springer v. Westcott, 166 N. Y. 117, 59 N. E. 693. That this rule remains the law of this state is indicated by the very recent affirmance of a judgment for the plaintiff in the case of Healy v. N. Y. C. & H. R. R. R., 153 App. Div. 516, 138 N. Y. Supp. 287, and 210 N. Y. 646, 105 N. E. 1086. No element of knowledge, notice, understanding, or assent, on the part of the plaintiff, or any one for her, appears in this case, and no facts appear as basis for inference that the plaintiff or her representative should have been "on guard," or were guilty of any nondisclosure which could create any fair estoppel against her.

[2] The defendant's claim of effectual limitation must therefore fall to the ground unless it be the law of this state that the enactment of the Public Service Commissions Law has enabled carriers to avoid liability for their own negligence through a method deriving validity only from statutory provisions undeniably designed for no such purpose. Section 28 of the Public Service Commissions Law requires every common carrier to file and give public notice of

"schedules showing the rates, fares and charges for the transportation of passengers and property." The same section requires that such schedules "shall also state * * * all privileges or facilities granted or allowed, and any rules or regulations which may in any wise change, affect or determine any part, or the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee." Section 38 of the same statute provides that "every common carrier and railroad corporation shall be liable for loss, damage and injury to property carried as baggage up to the full value and regardless of the character thereof, but the value in excess of $150 shall be stated upon delivery to the carrier, and a written receipt stating the value shall be issued by the carrier, who may make a reasonable charge for the assumption of such liability in excess of $150 and for the carriage of baggage exceeding 150 pounds in weight upon a single ticket. Nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

Do these statutory provisions make effectual what this defendant did? It is doubtless true that the plaintiff was chargeable with knowledge of the provisions of statute (Gardiner v. N. Y. C. & H. R. R. R., 201 N. Y. 387, at page 392, 94 N. E. 876, 34 L. R. A. [N. S.] 826, Ann. Cas. 1912B, 281), and it may be the eventual holding of the Court of Appeals that a passenger is chargeable also with knowledge of the provisions of all tariff schedules filed by the carrier (Missouri, Kansas & Texas Ry. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Gardiner v. N. Y. C. & H. R. R. R., supra). That the passenger is "chargeable with notice of the defendant's tariff," the Appellate Division, through Mr. Justice Miller, expressed itself, subsequently to the decision of the Court of Appeals in the Gardiner Case, as "far from deciding" (Robinson v. N. Y. C. & H. R. R. R., 145 App. Div. 391, 396, 129 N. Y. Supp. 1033); and Mr. Justice Scott observed, in a concurring opinion in the same case, that "it is pushing the doctrine that 'every man is presumed to know the law' to a quite unreasonable point to presume that the average wayfarer who travels by railroad knows and keeps constantly in mind, not only the provisions of the Public Service Commissions Law, a long and complicated statute," but also the minutiæ of rates and regulations contained in the filed schedules (Robinson v. N. Y. C. & H. R. R. R., supra). The action of the Appellate Division in the Robinson Case was affirmed by the Court of Appeals on the opinion of Mr. Justice Miller below. 203 N. Y. 627, 97 N. E. 1115. If it be held that a passenger is not charged with a constructive knowledge of and assent to every intricacy of schedule provisions regarding his rights and liabilities, unless they are fairly brought to his notice, or if it be held in this state that a passenger is not held to a constructive assent to a schedule provision directly or indirectly accomplishing a result contrary to public policy, as contended in the monumental dissenting opinion of Mr. Justice Pitney in the case of Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, decided last month by the Supreme Court of the United States, it is clear that this plaintiff may recover full compensation.

It remains to consider briefly the question whether the result is otherwise if this doctrine of the constructive knowledge of the nonexpert passenger is finally held in this state to cover the complicated contents of the carrier's schedules. In the federal courts this is no longer an open question. The provisions of the Interstate Commerce Act and the Carmack amendment thereto have been decisively adjudicated in the Hooker Case to make effectual the limitation of the carrier's liability. Do the provisions of the Public Service Commissions Law or the decisions of the courts of this state establish the same rule as to shipments wholly within the boundaries of this state? The question is not one which has been decisively answered by the highest court of this state, except in so far as the affirmance in the Robinson Case, on the opinion below, may be regarded as answer.

So far as can be gathered from decisions thus far made under the Public Service Commissions Law, the purpose and effect of section 38 and the correlated sections may be summarized as follows: The section is designed to add to, rather than diminish, the carrier's liability for loss of baggage. It provides for liability for all loss, damage, and injury of any property carried as baggage up to the full value and regardless of the character thereof.

That has been held to be the purpose and effect of section 38 down to the word "but," and the succeeding words of the section have been held not to be designed to relieve the carrier from liability, but rather to enable it to collect an adequate rate to insure itself against the increased liability imposed by the preceding portion of the section. The carrier is authorized to require the stating of the value of the property tendered as baggage. It shall then furnish a receipt stating the value declared by the passenger, and may exact a reasonable charge for any value stated in excess of $150. In other words, the carrier is made liable in any event for the full value of all property carried as baggage. It may accept the property without inquiry as to value, and then in the event of loss the full value is a matter for legal proof, with the owner and carrier each free to show what the full value really was; or the carrier may inquire the value, insert the owner's statement of the value in the receipt given, exact an additional charge for the additional liability if the stated value exceeds $150, and thus estop the owner or consignor from ever claiming that the value was more than that which he stated in response to the carrier's inquiry.

[3] The provision is regarded as for the benefit of the carrier, who may waive it or proceed without reference to it, at its option, but may not create an estoppel against proof of the actual full value without obtaining from the consignor a statement of value, inserting such value in the receipt, and making it the basis of the rate exacted. Meister v. Woolverton, 140 App. Div. 926, 125 N. Y. Supp. 439; Robinson v. N. Y. C. & H. R. R. R., 145 App. Div. 391, 129 N. Y. Supp. 1030. As was recently said by the Appellate Division for the First Department in the Robinson Case, supra: "If it had been intended to limit the liability to $150 unless the excess value is stated, that intention would not have been left to inference." Inasmuch as neither the Legislature nor the appellate courts of this state have declared any rule of law making effective the method pursued by this carrier, it is no part of the province of a trial court to endeavor to find a way of working out a contrary result, in obedience to some conception of public policy to which the legislative authorities of the state have not given expression.

For that reason I decline to hold the limitation effectual in the case at bar. There are other respects in which I cannot regard the carrier's procedure as within the purview of the statute, but they need not be considered here.

The defendant's motion to set aside or reduce the verdict is denied, and entry of judgment for the plaintiff for the full amount found by the jury is directed.

Argued October Term, 1914, before SEABURY, COHALAN, and BIJUR, JJ.

William Mann, of New York City, for appellant.

Neal Dow Becker, of New York City, for respondent.

PER CURIAM. Judgment affirmed.

